## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

RAMADA WORLDWIDE INC.,

                    **Plaintiff,**

v.

ATN INN & SUITES, LLC and
MAHFUZUR RAHMAN,

                    **Defendants.**

Civ. No. 15-3993 (KM) (MAH)

**OPINION**

---

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on the unopposed motion of Plaintiff Ramada Worldwide Inc. ("Ramada") for default judgment against Defendants ATN Inn & Suites, LLC ("ATN") and Mahfuzur Rahman ("Rahman"). For the reasons set forth below, I will enter default judgment against ATN and Rahman. Ramada is awarded $405,094.68, comprising (i) $49,963.72 in outstanding fees and interest and (ii) $355,130.96 in liquidated damages and interest. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**BACKGROUND**

Ramada is a Delaware corporation with its principal place of business in New Jersey. (Complaint, Dkt. No. 1 ("Compl.") ¶ 1) ATN is a limited liability company organized under the laws of and maintaining its principal place of business in Michigan. (*Id.* ¶ 2) Rahman is the sole member of ATN and is a citizen of Michigan. (*Id.* ¶¶ 3–4)

This suit arises from a franchise agreement entered into between Ramada and ATN on March 4, 2011 ("Franchise Agreement") pursuant to

1

which ATN was to operate a 195-room hotel under the Ramada name in Taylor, Michigan for a period of fifteen years. (Compl. ¶¶ 9–10) Rahman, ATN's sole member, signed the Franchise Agreement on behalf of ATN. (Certification of Suzanne Fenimore in Support of Motion for Final Judgment by Default, dated October 22, 2015, Dkt. No. 6-3 ("Fenimore Cert.") Ex. A ("Franchise Agreement") p. 27) On the same day, ATN and Ramada entered into a Connectivity Equipment Lease and Services Addendum which supplemented the Franchise Agreement (the "Addendum"). (Fenimore Cert. Ex. B) Rahman also executed a guaranty of ATN's obligations under the Franchise Agreement ("Guaranty"). (Compl. ¶ 21; Fenimore Cert. Ex. C) The Guaranty committed Rahman to make any unpaid payments on behalf of ATN in the event that ATN defaulted under the Franchise Agreement. (Compl. ¶ 22)

Under the terms of the Franchise Agreement, ATN was obligated make periodic payments to Ramada for royalties, taxes, and a variety of fees, which are collectively defined by the Franchise Agreement as "Recurring Fees." (Compl. ¶ 11; Franchise Agreement §§ 7, 18.3) In order to calculate the royalties owed, ATN undertook to prepare and submit to Ramada monthly gross room revenue reports. (Compl. ¶ 13; Franchise Agreement § 3.6) ATN was also obligated to maintain accurate books and records and to allow Ramada to audit those documents. (Compl. ¶ 14) The Franchise Agreement provided that Ramada could terminate the agreement if ATN discontinued operating the property as a Ramada-branded hotel or if ATN lost possession of the property. (*Id.* ¶ 15; Franchise Agreement § 11.2) In the event one of those two things happened, ATN agreed to pay Ramada liquidated damages in accordance with a formula provided in the Franchise Agreement, as well as certain termination costs set forth in the Addendum. (Compl. ¶ 16; Franchise Agreement §§ 12.1, 18.2; Addendum § 12(c)) On June 29, 2011, ATN ceased operating the facility as a Ramada-branded property, triggering default and a termination of the Franchise Agreement. (Compl. ¶ 24) Ramada informed ATN that it owed liquidated damages and all outstanding Recurring Fees. (*Id.* ¶ 25)

Following the termination of the Franchise Agreement, Ramada entered into a new franchise agreement with ATN for the same 195-room hotel in Taylor, Michigan, on December 7, 2011 ("Second Franchise Agreement"). (Dkt. No. 8, p. 2) Under the terms of the Second Franchise Agreement, ATN was required to complete certain construction obligations by April 14, 2014. ATN failed to complete those obligations by the deadline and the Second Franchise Agreement was terminated.

On June 15, 2015, Ramada filed its complaint in this action. (Dkt. No. 1) The complaint asserts causes of action sounding in breach of contract and unjust enrichment for ATN and Rahman's failure to remit payment on the Recurring Fees. Although served, neither ATN nor Rahman answered the complaint. On October 1, 2015, the clerk entered default against ATN and Rahman. On October 23, 2015, Ramada filed this motion for a default judgment against ATN and Rahman. (Dkt. No. 6) Ramada seeks (i) $49,963.72 in unpaid recurring fees and interest and (ii) $355,130.96 in liquidated damages and interest, for a requested award of $405,094.68. (Fenimore Cert. ¶¶ 20–30)

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**LEGAL STANDARD AND DISCUSSION**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1

(D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d
§ 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the
Complaint by virtue of their default, except those factual allegations related to
the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July
17, 2013). While "courts must accept the plaintiff's well-pleaded factual
allegations as true," they "need not accept the plaintiff's factual allegations
regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F.
Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary
support to be lacking, it may order or permit a plaintiff seeking default
judgment to provide additional evidence in support of the allegations. *Doe*,
2013 WL 3772532, at *2.

## I.     Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the
plaintiff must have properly served the summons and complaint, and the
defendant must have failed to file an answer or otherwise respond to the
complaint within the time provided by the Federal Rules, which is twenty-one
days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir.
1985); Fed. R. Civ. P. 12(a).

Service of an individual, such as Rahman, may be made by personal
service, leaving a copy of the summons and complaint at the individual's
dwelling or usual place of abode with a person of suitable age and discretion,
delivering a copy of the summons and complaint with an agent for service of
process, or by following state law for serving a summons in an action brought
in courts of general jurisdiction where the district court is located or where
service is made. Fed. R. Civ. P. 4(e).

Service of a corporate entity, such as ATN, may be made by delivering a
copy of the summons and complaint to "an officer, a managing or general
agent, or any other agent authorized by appointment or by law to receive
service of process" or by following state law for serving a summons in an action

brought in courts of general jurisdiction where the district court is located or where service is made. Fed. R. Civ. P. 4(h)(1).

New Jersey law states in relevant part that service on a corporation may be made

> by serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof, or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties.

N.J. Ct. R. 4:4-4(a)(6).

If, despite diligent efforts, personal service cannot be made in accordance with N.J. Ct. R. 4:4-4(a)(1), *in personam* jurisdiction may nevertheless be obtained over any defendant by substituted or constructive service, in accordance with N.J. Ct. R. 4:4-4(b)(1)(C), by

> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its principal place of business, or to its registered office.

N.J. Ct. R. 4:4-4(b)(3).

Here, the prerequisites for default judgment have been met. The complaint was filed on June 15, 2015. (Dkt. No. 1) Despite diligent efforts and inquiry, Ramada was unable to personally serve ATN, Rahman, or any person authorized to receive service on behalf of ATN. (Certification of Bryan P. Couch

In Support of Motion for Final Judgment by Default, dated May 8, 2015, Dkt. No. 5 ("Couch Cert.") ¶ 4) Ramada did, however, successfully serve the Summons and Complaint on August 25, 2015 via regular and certified mail as permitted by N.J. Ct. R. 4:4-4(b)(3). (Couch Cert. ¶ 5) ATN and Rahman had twenty-one days (until September 15, 2015) to file an answer or otherwise respond to the complaint pursuant to Fed. R. Civ. P. 12(a). The clerk entered default against ATN and Rahman on October 11, 2015. (Docket Entry following Dkt. No. 5) Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

## II.    Three Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### a. Factor 1

The evaluation of the first factor is complicated, of course, by ATN and Rahman's failure to answer or to oppose this motion. My independent review of the record, however, does not suggest that the claims asserted by Ramada against the defendants are legally flawed or that either ATN or Rahman could mount a meritorious defense. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that Ramada has successfully stated claims for relief as against ATN and Rahman.

The complaint asserts six causes of action, which, in essence, amount to a claim for breach of contract against ATN for failing to remit payment on the Recurring Fees and liquidated damages and breach of the Guaranty against Rahman, in his capacity as guarantor, for failing to pay the Recurring Fees and

6

liquidated damages on behalf of ATN. Under New Jersey law, a prima facie case for breach of contract requires that the plaintiff show: (1) a contract between the parties; (2) a breach of that contract; and (3) damages resulting from the breach. *See Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985); *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The facts alleged in the Complaint establish that those elements are satisfied here. The declaration submitted in support of Ramada's motion and the exhibits annexed thereto corroborate those factual allegations. Both the Franchise Agreement and Guaranty are valid and enforceable contracts. Those contracts were breached by ATN's failure to pay certain of the Recurring Fees and liquidated damages owed to Ramada and Rahman's failure to personally pay the same. Ramada has accrued damages as a result of these breaches. In sum, the facts alleged by Ramada state a claim for breach of the Franchise Agreement against ATN and breach of the Guaranty against Rahman. I cannot discern a meritorious defense to these claims from the record before me.

### b. Factors 2 and 3

The second and third factors weigh in favor of default. ATN and Rahman were properly served on August 25, 2015 but have failed to appear and defend themselves in any manner. It is clear that Ramada has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the

Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment against ATN and Rahman, and I will grant the motion for default judgment against the defendants.

### III.   Remedies

Ramada seeks two types of compensation, totaling $405,094.68. (*See* Fenimore Cert. ¶ 30) Specifically, Ramada seeks (1) $49,963.72 in recurring fees, including principal and interest, and (2) $355,130.96 in liquidated damages and interest.  (*See id.* ¶¶ 20–29)

Ramada has submitted documentary evidence in support of its demands, while ATN and Rahman have submitted nothing and have failed to appear or respond in any manner. An *ex parte* hearing would serve little additional purpose, so I rule based on the record before me.

I will grant Ramada's request for the principal amount of recurring fees due and interest on those fees. (*See* Fenimore Cert. ¶ 20) Ramada has documented recurring fees (and the interest thereon calculated at 1.5% monthly) owed from March 2011 through July 2011, corresponding to the time from the date the Franchise Agreement was executed until ATN ceased operating the facility as a Ramada-branded facility, in the amount of $49,963.72. (Fenimore Cert. Ex. E)

I will also grant Ramada's request for liquidated damages. Despite a second attempt to revive the relationship, there has been no Ramada-branded hotel operating out of the facility site in Taylor, Michigan, since the termination of the Franchise Agreement in June 2011. (*See* Supplemental Affidavit of

8

Suzanne Fenimore in Further Support of Plaintiff's Motion for Final Judgment by Default, dated January 15, 2016, Dkt. No. 8-1 ("Fenimore Supp. Cert.") ¶¶ 7–10) Liquidated damages, provided for under the terms of the Franchise Agreement and Addendum pursuant to a delineated formula, are meant to replace the income that RWI would have received if not for the premature termination of the Franchise Agreement. (*Id.* ¶ 11) The formula for calculating liquidated damages is meant to provide for two years of lost fees, representing the average time it takes to replace the terminated operator of a hotel property. (*Id.* ¶ 14) Ramada has documented liquidated damages in the amount of $200,104.68, based on the calculation set forth in the Franchise Agreement of $1,000 multiplied by 195 (the number of rooms ATN was authorized to operate), plus a payment of $5,104.68 provided for in the Addendum. (*See* Fenimore Cert. ¶¶ 26–28; Franchise Agreement § 18.2; Addendum § 12(c)) Ramada also properly calculated interest on this amount at the rate of 1.5% monthly from July 29, 2011 (30 days after the date of termination of the Franchise Agreement) through November 16, 2015 (the return date of the motion), for a total interest amount of $155,026.28. (Fenimore Cert. ¶ 29) Liquidated damages plus interest leads to a total amount of $355,130.96.

The total judgment awarded is, therefore, $405,094.68. Post-judgment interest will accrue from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

**CONCLUSION**

For the foregoing reasons, the motion is granted as to defendants ATN and Rahman, and a default judgment will be entered in favor of plaintiff Ramada against defendants ATN and Rahman in the total amount of $405,094.68, with post-judgment interest from this date at the appropriate rate pursuant to 28 U.S.C. § 1961.

An appropriate order and judgment will issue.

KEVIN MCNULTY, U.S.D.J.

Date:  January 21, 2016